| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
|---|---|---|
| | ) SS | |
| COUNTY OF PENNINGTON | ) | SEVENTH JUDICIAL CIRCUIT |

| TRACY CRECELIUS, | ) | Civ. No. |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Tracy Crecelius, through her undersigned attorneys, for her cause of action against Defendant The Hartford Accident and Indemnity Company states and alleges as follows:

## PARTIES

1. Plaintiff Tracy Crecelius is an individual who was an employee of Hospital Klean of Texas, in Rapid City, South Dakota, when on or about January 14, 2010, she suffered a work-related injury.

2. Defendant The Hartford Accident and Indemnity Company is a corporation engaged in the business of providing insurance and was providing workers' compensation insurance coverage to Plaintiff's employer, Hospital Klean of Texas, at the time of the injuries.

## JURISDICTION

3. Plaintiff is currently a citizen of the State of South Dakota and resides Pennington County.

4. Defendant is an insurance company which does business in the State of South Dakota.

## FACTS

5. At all times relevant to this action, Defendant had in place a policy of insurance that, by its terms, required it to pay workers' compensation benefits to employees of Hospital Klean of Texas who were injured within the course and scope of their employment.

6. On January 14, 2010, Plaintiff suffered an injury when she fell on ice and snow while working for Hospital Klean of Texas.

7. Plaintiff's employer was notified of her injury on the same date of the accident, January 14, 2010.

8. Due to the fall, Plaintiff injured her low back at L4-5 which required a lumbar fusion at L4-5 on April 2, 2010.

9. Plaintiff's back surgery did not alleviate her pain and symptoms, and Plaintiff suffers from chronic pain syndrome.

10. Plaintiff attempted to return to work in December of 2010, but was unable to successfully complete her job duties.

11. Defendant initially accepted responsibility for the claim and paid temporary total disability benefits and medical expenses.

12. On March 9, 2011, one of Plaintiff's treating physicians, Dr. Brett Lawlor, restricted Plaintiff from any and all work duties.

13. Dr. Lawlor prescribed Cymbalta for Plaintiff's low back pain and depression.

14. Dr. Lawlor recommended that Plaintiff treat with Patty Bambeck for depression issues related to her injuries.

15. Dr. Lawlor's report from March of 2011 and May of 2011 indicated that Plaintiff needs to begin treating with Patty Bambeck and taking Cymbalta.

16. For months Defendant denied approval for Dr. Lawlor's requested prescription for Cymbalta.

17. On April 18, 2011, Plaintiff's counsel sent a letter to Defendant requesting clarification for why it was refusing to approve Dr. Lawlor's prescription for Cymbalta.

18. On May 24, 2011, Plaintiff's counsel again sent a letter to Defendant to address its refusal to allow treatment with Patty Bambeck and its refusal to approve the prescribed Cymbalta.

19. By June 1, 2011, Plaintiff's counsel had not received any response from Defendant regarding Dr. Lawlor's prescription for Cymbalta.

20. On June 1, 2011, Plaintiff's counsel sent Defendant a letter with Dr. Lawlor's May 5, 2011, report attached, wherein Dr. Lawlor stated with reasonable medical certainty that Tracy needs Cymbalta to treat her pain.

21. On June 20, 2011, Defendant sent a letter to Dr. Lawlor authorizing Plaintiff's prescription for Cymbalta.

22. Plaintiff again attempted to fill her prescription for Cymbalta in the months of June of 2011, July of 2011, and August of 2011 and was informed by the pharmacy that Defendant had refused to authorize it.

23. On August 22, 2011, Plaintiff attempted to get her Cymbalta prescription filled and the Medicap Pharmacy declined to fill the prescription stating it needed to be preapproved.

24. From April 20, 2011, to June 9, 2011, for nearly 7 weeks, Defendant cut-off TTD payments without any legal basis to do so.

25. From July 1, 2011, to August 11, 2011, Plaintiff received TTD payments every two weeks when she was entitled to payment every week.

26. Defendant was required to pay Plaintiff for the pay periods of August 5, 2011 to August 11, 2011, and from August 12, 2011 to August 18, 2011, and failed to do so.

27. On August 23, 2011, Defendant failed to timely pay Plaintiff.

28. On August 26, 2011, Plaintiff's counsel notified Defendant that Plaintiff had not received payment.

29. On September 22, 2011, Defendant was again notified that Plaintiff had not received her check.

30. Again in January of 2012, Defendant failed to timely pay Plaintiff for the pay periods of January 6, 2012 to January 12, 2012, and January 13, 2012 to January 19, 2012.

31. Plaintiff began treating with Laura Hughes at Scovel Psychological Services. Mrs. Hughes opined that Tracy experiences significant anxiety and depression as a result of the physical injury that occurred while on the job in addition to her financial stressors.

32. Dr. Hughes opined that Plaintiff's depression from her injuries is severe with intermittent suicidal ideation.

33. Defendant failed to timely pay Dr. Hughes' medical bills for treatments provided to Plaintiff.

34. On February 21, 2012, Defendant was notified that Dr. Lawlor had prescribed pool therapy for Plaintiff.

35. Defendant did not authorize pool therapy per the recommendation of Dr. Lawlor until March 26, 2012, when only a 3 month YMCA membership was approved for the months of April, May and June of 2012.

36. On July 23, 2012, Defendant had still not approved further pool therapy and was advised that her YMCA membership had expired.

37. On July 31, 2012, Defendant had still not approved pool therapy and Plaintiff's YMCA membership, and was advised by Plaintiff's counsel that Dr. Hughes was concerned for Plaintiff's physical and mental well being.

38. Not until August 8, 2012, was Plaintiff's YMCA membership renewed so that she could continue the pool therapy that was prescribed by her doctors.

39. On February 1, 2013, Defendant again allowed Plaintiff's YMCA membership to expire.

40. On February 4, 2013, Defendant was notified by Plaintiff's counsel that it needed to renew Plaintiff's YMCA membership for pool therapy that was prescribed by her doctors.

41. On June 10, 2011, Defendant referred Plaintiff to Dr. Ripperda for an independent medical examination.

42. Dr. Ripperda indicated that Plaintiff had a fall on her work premises injuring her back which resulted in a surgical fusion at L4-5.

43. Dr. Ripperda opined that Plaintiff's current symptoms and need for medical attention are the result of the traumatic injury described on January 14, 2010.

44. Dr. Ripperda opined that based on Plaintiff's job descriptions, she is unable to perform her previous job with Hospital Klean of Texas.

45. As a result of Defendant's termination of disability benefits Plaintiff was forced to hire and pay for an attorney, incur substantial costs and hardship, and file a Petition for Hearing with the South Dakota Department of Labor.

46. As a result of Defendant's failure to make timely TTD payments, failure to approve treatment with Patty Bambeck, failure to timely approve pool therapy, failure to timely pay Dr. Hughes' bill, and its failure to approve prescribed medication from Plaintiff's treating physician, Plaintiff suffered severe emotional distress and suicidal ideations.

## COUNT I

### BAD FAITH

47. Plaintiff hereby re-alleges all previous paragraphs as if set forth herein.

48. At all material times, Defendant committed the wrongful acts herein alleged through agents or employees who were acting within the purposes and scope of its authority and employment.

49. With actual notice of Plaintiff's compensable injuries, Defendant acted knowingly and without reasonable basis in refusing to make a reasonable, prompt, and adequate investigation of Plaintiff's claim for compensation. This was done for the purposes of discouraging, avoiding, or reducing the compensation due to Plaintiff.

50. Defendant, without any reasonable basis and for the purpose of discouraging, avoiding, or reducing the compensation due to Plaintiff, intentionally and wrongfully denied Plaintiff's workers' compensation claim.

51. Defendant, without any reasonable basis and for the purpose of discouraging, avoiding, or reducing the compensation due to Plaintiff, intentionally and wrongfully delayed payment of Plaintiff's benefits.

52. Defendant, without any reasonable basis and for the purpose of discouraging, avoiding, or reducing the compensation due to plaintiff, intentionally and wrongfully denied Plaintiff's medical treatment.

53. Defendant either knew or should have known of the lack of reasonable basis for denial of benefits.

54. Defendant denied workers' compensation benefits in this case in violation of the covenant of good faith and fair dealing and acted in bad faith.

55. Defendant also failed to give equal consideration to the interests of Plaintiff by ignoring facts that support her claim, and ignoring the law that requires payment of the claim.

56. Defendant' actions constituting bad faith included, but were not limited to, the following:

   a. Defendant breached its duty to adjust Plaintiff's claim in good faith and to investigate every available source of information, set out to collect the minimum facts necessary to support a denial of the claim;

   b. Defendant took actions which injured the Plaintiff's rights;

   c. Defendant delayed authorization for medication prescriptions without any reasonable basis to do so;

   d. Defendant disregarded treatment recommendations by Plaintiff's treating physician without any reasonable basis to do so;

   e. Defendant failed to fulfill its continuing duty to investigate and evaluate the claim; and

   f. Defendant terminated Plaintiff's disability benefits without any reasonable basis for doing so.

57. As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

58. Plaintiff is entitled to damages as a result of the breach of the implied duty of good faith and fair dealing.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiff hereby re-alleges all previous paragraphs as if set forth herein.

60. Defendant knew, or in the exercise of reasonable care should have known, that its behavior and actions in the denial of benefits, and subsequent handling of this claim would result in serious emotional distress to Plaintiff due to her medical and financial position.

61. In doing the acts alleged in this Complaint, Defendant acted with reckless, intentional, and deliberate disregard for the likelihood that Plaintiff would suffer severe emotional distress as a direct and proximate result of its actions.

62. As a legal result of this conduct, Plaintiff has experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment.

63. Plaintiff is entitled to damages as a result of the intentional infliction of emotional distress.

### COUNT III
### VEXATIOUS REFUSAL TO PAY

64. Plaintiff hereby re-alleges all previous paragraphs as if set forth herein.

65. Defendant's refusal to timely pay the full amount of benefits was vexatious or without reasonable cause, and pursuant to SDCL § 58-12-3, therefore, Plaintiff is entitled to her attorney's fees and costs.

### COUNT IV
### PUNITIVE DAMAGES

66. Plaintiff hereby re-alleges all previous paragraphs as if set forth herein.

67. Defendant has acted with oppression, fraud, express and implied malice and a reckless disregard for the rights of Plaintiff by refusing and delaying in providing compensation benefits owed to Plaintiff, and intentionally inflicting emotional distress upon Plaintiff.

68. Punitive damages are appropriate in this case pursuant to SDCL § 21-3-2 in order to punish and deter Defendant from continuing in this course of conduct.

WHEREFORE, the Plaintiff prays for judgment as follows:

1. All damages (compensatory, general, special, and consequential) in an amount to be determined at trial;

2. Punitive damages in an amount to be justly determined by the jury;

3. Attorneys' fees, costs, disbursements herein, and interest; and

4. Such other and further relief as the Court deems just and proper.

Dated the 29th day of January, 2014.

BEARDSLEY, JENSEN & VON WALD,
Prof. L.L.C.

By: /s/ Beardsley
Steven C. Beardsley
Michael S. Beardsley
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD  57709
Telephone: (605) 721-2800
Facsimile: (605) 721-2801
Emails: sbeards@blackhillslaw.com
mbeardsley@blackhillslaw.com
*Attorneys for Plaintiff*

**TRIAL BY JURY IS HEREBY DEMANDED**